**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------×

GEORGE MARTINEZ,

        *Plaintiff*,

        *v*.

VIVID MECHANICAL LLC,

        *Defendant*.

------------------------------------------------------------------------×

16 CV 3763

**COMPLAINT**

Plaintiff George Martinez, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendant Vivid Mechanical LLC as follows:

## PRELIMINARY STATEMENT

1. Plaintiff George Martinez ("Plaintiff" or "Mr. Martinez") seeks damages and costs against Defendant Vivid Mechanical LLC ("Defendant" or "Vivid") for discriminating against Mr. Martinez based on his race (Hispanic) and national origin (Dominican) by subjecting him to a hostile work environment, terminating his employment, and retaliating against him for complaining of discriminatory conduct. Defendant's conduct violates the Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, and New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code §§ 8-101 to 14-151.

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendant violated Plaintiff's rights under Section 1981.

3. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under NYCHRL, as the federal claims arise from the same set of operative facts as the state and local claims, and form part of the same case or controversy.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

5. Plaintiff respectfully requests a trial before a jury.

## PARTIES

6. Plaintiff, at all times relevant hereto, was and is a resident of Bronx County in the State of New York.

7. Upon information and belief, at all times relevant hereto, Defendant was and is a corporation organized under the laws of the State of New York with offices located at 45-39 Davis Street, Long Island City, New York 11101.

## STATEMENT OF FACTS

8. Mr. Martinez is a Hispanic man of Dominican descent.

9. On November 13, 2013, Vivid hired Mr. Martinez as a Mechanic.

10. Immediately upon his joining Vivid, Mr. Martinez's supervisor, Richard Lalka, began to refer to Mr. Martinez as a "spic" and a "dumb-in-a-can," an offensive play on words regarding his Dominican national origin.

11. These race- and national origin–based insults continued throughout his employment.

12. Vivid promoted non-Hispanic employees faster than their Hispanic counterparts.

13. Vivid's Project Managers, a group of twenty (20) non-Hispanic individuals, refused to review drawing plans with Mr. Martinez, but readily reviewed drawing plans with their non-Hispanic employees.

14. The Project Managers held private meetings with Mr. Martinez's non-Hispanic coworkers, giving them feedback designed to help them advance in their careers at Vivid.

15. When Mr. Martinez asked the Project Managers why they would not provide him with the same sort of advice that they provided to non-Hispanic employees, they ridiculed him, telling him, "Spics just don't know how to do the work."

16. Vivid's management constantly told Mr. Martinez to "shut the fuck up" and referred to him as "nigger."

17. In May 2014, Mr. Martinez was promoted to Lead Mechanic. Mr. Martinez had been told that upon his promotion, he would receive a raise in salary commensurate with his new title and responsibilities. However, unlike the non-Hispanic employees who were promoted from Mechanic to Lead Mechanic, Mr. Martinez did not receive a raise.

18. Mr. Lalka always had a pretextual excuse for refusing to give Mr. Martinez his due raise. For example, he cited Mr. Martinez's being late by a few minutes as a reason to deny him a raise, although Vivid's non-Hispanic employees were regularly late without reprimand.

19. Mr. Martinez continued to plead for his raise, but the situation was not resolved. Eventually, he was finally forced to contact Vivid's President directly.

20. Mr. Martinez did not receive his promised raise until December 2014, seven months after his promotion.

21. In and around 2014, Mr. Martinez complained to Vivid's Human Resources Department ("HR") about the discrimination he was experiencing.

22. HR assured Mr. Martinez that they would correct the issue. However, Mr. Martinez never received any follow-up communications, nor did HR arrange any sort of meeting to address his complaints; the discrimination against Mr. Martinez continued.

23. In fact, Mr. Lalka's harassment only grew worse in retaliation for Mr. Martinez's complaints.

24. In and around August 2015, Mr. Martinez was promoted to Foreman.

25. Mr. Martinez was the only Hispanic foreman out of a group of two white and one Guyanese individuals.

26. Mr. Lalka was determined to sabotage Mr. Martinez in his new position.

27. For example, Mr. Lalka, who was responsible for ordering the equipment that Mr. Martinez needed, often sent the wrong equipment to Mr. Martinez's building, delaying his work.

28. Additionally, Mr. Lalka excluded Mr. Martinez from monthly foreman meetings and isolated Mr. Martinez from the rest of the team.

29. Mr. Martinez only knew that the monthly meetings were held after he saw his colleagues arrive at the job site late together.

30. When Mr. Martinez complained to Mr. Lalka about his treatment, Mr. Lalka told Mr. Martinez that he would "take the food out of [Mr. Martinez's] children's mouths."

31. Mr. Martinez once again complained to HR about Mr. Lalka's offensive remarks, but, as before, he did not receive any follow-up communications regarding his complaint, and the situation did not change.

32. On or about October 1, 2015, Vivid's Regional Manager, Ramon Sanchez, abruptly terminated Mr. Martinez without explanation.

33. Mr. Martinez left several voicemails inquiring about the reason for his termination, but no one returned his call.

## CLAIMS
### FIRST CAUSE OF ACTION
**Hostile Work Environment Based on Race in Violation of Section 1981**

34. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 33 with the same force as though separately alleged herein.

35. Section 1981 prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

36. Defendant discriminated against Plaintiff by subjecting him to offensive, racially motivated comments that were so severe and pervasive that they altered the terms, conditions, or privileges of his employment.

37. As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

38. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### SECOND CAUSE OF ACTION
**Discrimination Based on Race in Violation of Section 1981**

39. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 38 with the same force as though separately alleged herein.

40. Section 1981 prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

41. Defendant discriminated against Plaintiff by, among other things, terminating his employment because of his race.

42. As a direct and proximate consequence of Defendant's discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

43. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights under, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

### THIRD CAUSE OF ACTION
### Retaliation in Violation of Section 1981

44. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 43 with the same force as though separately alleged herein.

45. Section 1981 prohibits employers from retaliating against any employee for making a complaint of racial discrimination.

46. Plaintiff properly complained to Defendant about racial discriminators' comments and conduct.

47. Defendant retaliated against Plaintiff by, *inter alia*, subjecting him to further racially motivated harassment, refusing to reprimand the discriminatory behavior, treating him

less well than his coworkers, and ultimately terminating his employment because of his complaints of racial discrimination.

48. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

49. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

**FOURTH CAUSE OF ACTION**
**Hostile Work Environment Based on Race and National Origin in Violation of the NYCHRL**

50. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 49 with the same force as though separately alleged herein.

51. The NYCHRL prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race or national origin.

52. Defendant discriminated against Plaintiff by subjecting him to offensive, racially motivated comments and treating him less well than his non-Hispanic and non-Dominican coworkers.

53. Plaintiff properly complained to Defendant about discriminators' comments and conduct.

54. As a direct and proximate consequence of Defendant's race and national origin discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

55. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## FIFTH CAUSE OF ACTION
**Discrimination Based on Race and National Origin in Violation of the NYCHRL**

56. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 55 with the same force as though separately alleged herein.

57. The NYCHRL prohibits employers from discharging any employee because of race and/or national origin.

58. Defendant terminated Plaintiff because of his race and national origin.

59. As a direct and proximate consequence of Defendant's race and national origin discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

60. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SIXTH CAUSE OF ACTION
**Retaliation Based on Complaints of Race and National Origin Discrimination in Violation of the NYCHRL**

61. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 60 with the same force as though separately alleged herein.

62. NYCHRL prohibits retaliation by an employer against an employee for complaining of discriminatory practices illegal within the NYCHRL.

63. Plaintiff properly complained to Defendant about discriminators' comments and conduct.

64. Defendant retaliated against Plaintiff by, *inter alia*, subjecting him to further racially motivated harassment, refusing to reprimand the discriminatory behavior, treating him less well than non-Hispanic and non-Dominican employees, and ultimately terminating his employment because of his complaints of race and national origin discrimination.

65. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial economic damages.

66. Defendant's retaliation toward Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

**Request for Relief**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first claim, actual damages to be determined at trial, but in no event less than $250,000;
B. For the second claim, actual damages to be determined at trial, but in no event less than $250,000;
C. For the third claim, actual damages to be determined at trial, but in no event less than $250,000;
D. For the fourth claim, actual damages to be determined at trial, but in no event less than $250,000;

Dated:      New York, New York
            July 6, 2016

                              THE HARMAN FIRM, LLP

                        By: _____
                              Walker G. Harman, Jr. [WH-8044]
                              Owen H. Laird [OL-6994]
                              Edgar M. Rivera [ER-1378]
                              220 Fifth Avenue, Suite 900
                              New York, NY 10001
                              (212) 425-2600
                              wharman@theharmanfirm.com
                              *Attorneys for Plaintiff*